CASE 43—PETITION EQUITY—JULY 7.

# Webster vs. Bronston, Trustee, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

CREDITORS PRIOR AND SUBSEQUENT TO JUNE 1, 1866.—A house and lot, under a deed of trust for the equal *pro rata* benefit of all the creditors, sold for two thousand six hundred and twenty-seven dollars and seventy-seven cents, in which a homestead right was reserved in the deed, and claimed by the grantor. Debts prior to June 1, 1866, when the homestead act took effect, amounted to one thousand six hundred and sixteen dollars and eighty-one cents. Subsequent debts amounted to two thousand and fifty-two dollars and forty-three cents. The circuit court adjudged a *pro rata* distribution of the entire fund, except one thousand dollars, among all the creditors, and then applied so much of the one thousand dollars as was necessary to fully satisfy the prior debts; thus leaving one hundred and one dollars and forty cents undisposed of to the homestead claimant, who appealed.

By an equal division of the Court of Appeals, the judgment of the circuit court is affirmed.

CHIEF JUSTICE WILLIAMS AND JUDGE HARDIN HOLD—

*First.* That the entire fund was subject to the prior debts, and that there was no exemption as to them.

*Second.* That after setting aside the one thousand dollars, as required by the homestead exemption act, which was not subject to the subsequent debts, the remainder of the fund was equally subject to both prior and subsequent debts.

Webster vs. Bronston, Trustee, &c.

*Third.* That such part of the fund as was exempted from the sub-sequent debts, should have been applied to the prior debts, from which it was not exempt; then, so much of the fund which was equally liable to both classes, should have been applied to the subsequent debts as was necessary to make them equal with the prior debts, and the residue equally applied *pro rata* to both classes. Thus each class should have received the same *pro rata* in the entire fund.

*Fourth.* That the subsequent creditors had an equitable right of priority in that part of the fund which was equally subject to both classes of debts, co-extensive with their deprivation in that part of the fund exempted from them, but which was not exempt from the prior creditors.

JUDGES ROBERTSON AND PETERS HOLD—

*First.* That the homestead exemption act applied to the prior as well as the subsequent debts, inasmuch as a sufficient amount would have remained to have satisfied the prior debts, after setting apart the one thousand dollars for a homestead.

*Second.* That as the fund was sufficient to pay the prior debts, after setting apart the amount exempted for a homestead, they had no right to touch the exempted amount, and that such a right could not be conferred upon them by subsequent debts.

*Third.* That the one thousand dollars should have been adjudged and set apart to appellant, as required by the homestead exemption act, to buy another homestead.

*Fourth.* That the residue should have been distributed *pro rata* among all the creditors, prior and subsequent, according to the terms of the deed of trust (which reserved the homestead exemption right) which was accepted by them, and under which they all claimed. All of them having done this, none of them can disregard the conditions of the trust.

SQUIRE TURNER,                          For Appellant,

CITED—

*Homestead Exemption Act, Myers' Supplement,* 714.

1 *Bouvier's Law Dic.,* "*Estoppel.*"

6 *Monroe,* 635; *Groves vs. Kennon.*

6 *Cruise's Digest, s. pp.* 23, 24.

BURNAM & CAPERTON,                      For Appellees.

Webster vs. Bronston, Trustee, &c.

Note.—The Court being equally divided in the separate opinions delivered in this case, the judgment of the circuit court stands affirmed.

CHIEF JUSTICE WILLIAMS DELIVERED THE FOLLOWING OPINION, IN WHICH JUDGE HARDIN CONCURRED:

Mary Webster, being embarrassed with debts more than she could pay, on March 9, 1867, made a deed of assignment to Thos. S. Bronston, as therein recited, "for the purpose of paying all my debts, or as far as possible, I hereby convey in trust to Thos. S. Bronston, jr., *all my estate that, by law, is subject to sale under execution.*" She then authorizes him to sell the property and take such steps as will, in his judgment, redound most to her creditors' benefit. She directs that the costs, attorney's fee, and trustee's compensation be first paid, "*and the residue I desire him to pay ratably among all my creditors.*"

She here conveys all her property subject to execution, and specifically directs, after the payment of all necessary expense, that the residue be *ratably—that is, equally or pro rata*—divided among all her creditors. She closes the deed by providing, that "it is distinctly understood that nothing herein is, in any way, to impair my claim to my homestead, or any of the property exempt by law from sale under execution." By this she meant to say, that, so far as the law exempted her homestead or other property from execution sale, it was not conveyed, and is only a more explicit and emphatic statement of what she conveyed than the terms of conveyance used at the beginning of the deed, when she conveyed all her estate that, by law, is subject to sale under execution; but in no sense either restricts or qualifies the legal effect of the conveyance; but, as she expresses it, she did not mean by the deed of trust

to impair her legal right to a homestead, whatever that legal right might be.

At the time of the conveyance she owed two classes of debts—one class existed prior to June 1, 1866, the date of our homestead statute, and which provides, that as to such debts there shall be no exemption under it; the other class was created after the said enactment.; and as to these, a homestead exemption existed.

There were of the first class debts, - - $1,616 81

Of the second class, - - - - - 2,052 43

Making the aggregate of - - - - $3,669 24

Her personalty, amounting to seventy-six dollars and twenty-two cents, was not sufficient to pay the costs; and after paying the remainder of these, there only remained of the house and lot, her only realty, two thousand six hundred and twenty-seven dollars and seventy-seven cents, this being sold because not divisible.

As a large deficit thus appeared, and as the trustee did not know the legal rights of the different classes of creditors of Mrs. Webster, he filed this petition against her and her creditors, to have a proper distribution made, under the direction of the chancellor, who referred the matter to a commissioner, and by his report the foregoing facts were ascertained. He also ascertained, that setting aside one thousand dollars homestead fund, there would remain, to be divided *ratably* among all her creditors, as provided in the deed, one thousand six hundred and twenty-seven dollars and seventy-seven cents, and that this would pay to each creditor forty-four and forty-hundredths per cent; and paying this per cent. to the first class of creditors, there would still remain due them eight hundred and ninety-eight dollars and sixty cents;

and as there was no exemption as to these by the express provisions of said statute, these must be paid in full out of the exemption fund of one thousand dollars, and only left her one hundred and one dollars and forty cents, which the court confirmed, and accordingly adjudged; and of this she complains and seeks a reversal.

This involves three important inquiries—

1. What did she convey?

2. Was the *pro rata* distribution among all the creditors of the general surplus fund right, after setting apart the one thousand dollars for homestead exemption?

3. Was the appropriation of eight hundred and ninety-eight dollars and sixty cents of this homestead fund, to pay the prior creditors in full, correct?

By the act of February 10, 1866 (*Myers' Supplement*, 714–15), it is provided, that " on all debts or liabilities, created or incurred after the first day of June, 1866, there shall be exempt from sale under execution, attachment, or judgment of any court, except to foreclose a mortgage given by the owner of a homestead, or for purchase money therefor, so much land, including the dwelling-house and appurtenances owned by the debtor, as will not exceed in value one thousand dollars."

By section 4, when the property is indivisible, and worth more than one thousand dollars, it must be sold, and that sum set aside as a homestead fund. No homestead was exempt by this act as to debts existing prior to June 1, 1866; so had all these creditors had executions, and put them in the sheriff's hands at the same instant, as all their rights under the deed accrued at the same time, and just as if all had had executions, could there be any doubt as to the duty of the sheriff? that is, to sell the house and lot, and after reserving one thousand dollars for homestead, to divide the remainder of the fund *pro rata* among all the execution creditors.

Webster vs. Bronston, Trustee, &c.

Section 3, article 3, chapter 36, 1 Stanton's Revised Statutes, 474, is as follows:

"When two or more executions come to an officer's hands at the same time, and he is unable to make the amount thereof, *he shall apportion the sum made among the several executions* so coming to his hands according to the amount thereof."

As the interest and rights of these creditors vested at the same instant under the same instrument, the application of the principle of this statute would be highly equitable, and especially so when the deed itself provides for this equality of distribution.

After so distributing equally this surplus fund among all the creditors, and finding the larger half of each debt unsatisfied, can there be any doubt but that the prior creditors could then force the officer to make the remainder of their debts out of this homestead fund of one thousand dollars? Certainly not; for the very potent legal reason, that as to these there is no homestead exemption.

But suppose the subsequent creditors alone had obtained executions; they could have sold the entire property in satisfaction of their claims, after setting aside one thousand dollars; and having done so, had the prior creditors subsequently obtained executions, is there any legal reason why they could not have subjected the entire homestead fund to their debts?

This is a full answer to the argument, that had the prior creditors first obtained executions, they could have made their entire debts; and then the subsequent execution of the second class creditors could not have subjected the remaining property of the debtor without setting aside to her one thousand dollars.

Either class of creditors would have obtained legal advantages by first having executions in the sheriff's hands; so this in nowise elucidates the equitable rule of distribution as applicable to this case. As all the creditors' rights accrued at the same instant under the deed, the more perfect analogous principle of distribution is to be found in the statute directing a *pro rata* distribution when the executions go to the sheriff's hands at the same time. But Mrs. Webster, by the express provisions of the deed, conveyed to the trustee all her estate not exempt from execution sale; and as to the first class of creditors, she conveyed all her realty, for she was entitled to exempt none of it from their executions; and she conveyed all the property not exempt from the executions of the second class to said trustee, to *divide pro rata* among *all her creditors.*

Mrs. Webster was then insolvent. Had she, by her deed, preferred one class of her creditors to the exclusion, in whole or part, of the other class, her act would have fallen under the denunciations of our statute of March 10, 1856 (1 *Stanton's Revised Statutes*, 553), which declares that all such assignments, sale, and mortgages, "shall operate as an assignment and transfer of all the property and effects of such debtor, *and shall inure to the benefit of all his creditors;*" and which enactment has been amended and further extended by the statute of March 8, 1862 (*Myers' Supplement*, 239); thus manifesting the settled policy of the Legislature to prohibit preference by a failing debtor to any portion or class of his creditors.

Then both the deed of trust and law conveyed all the property, not exempt from execution sale, for the *pro rata* benefit of all the creditors; and its equal distribution was not inconsistent with both the declared trusts of the deed

and the statutes regulating such cases, so far as her rights are involved. But it might well be doubted whether this deed should not be construed as conveying the entire homestead to pay the first class of creditors, as there could be no exemption as to them; and if so, according to a well recognized equitable rule, they should not be permitted to participate in the surplus fund until the second class got an equal *pro rata* payment; for equality is generally equity, and as said by this court in *Northern Bank of Kentucky vs. Keiser* (2 *Duvall*, 171), "Where one creditor has a right to resort to two funds, and another creditor is restricted, either by him or the law, to only one of them, the creditor excluded from one fund has an equitable right to priority, as to his only resource, *coextensively with his deprivation.*"

Now, although this was but one entire tract of land, yet under the statutes should it not be construed as constituting two funds as to the second class, because here would be one thousand dollars' homestead exemption which they could not resort to, but which was liable to the first class of creditors? and if so, according to this equitable rule, the second class had a right to demand that the first class should resort to it, and not participate in the general fund until equality was produced by a prior lien thereon to them; and this would seemingly be both justice and law; still, the second class of creditors are not seeking to disurb the judgment.

As the surplus of sixteen hundred and twenty-seven dollars and seventy-seven cents, left after deducting the one thousand dollars homestead fund, only paid a *pro rata* of forty-four and four tenths per cent. of the debts, and the subsequent creditors must lose fifty-five and six tenths per cent. of their debts, because they cannot resort to this homestead fund; yet this is not the situa-

tion of the prior creditors; for they are not prohibited, but expressly authorized, to do so, by the exception of their rights, in this homestead statute; and when they get their fifty-five and six tenths per cent. of their claims, not satisfied out of the general surplus fund, it will only leave to Mrs. Webster one hundred and one dollars and forty cents, which has been allowed her; and as this mode of distribution allows her one thousand dollars homestead exemption, as against the subsequent creditors, and as the law allows her nothing as against prior creditors, she has no legal right to complain. To set aside one thousand dollars as a homestead exemption fund to her, compels a violation, either of this homestead statute, which excepts from its provisions prior creditors, else an equal violation of our other statutes distributing the assets of bankrupts and insolvents equally among all creditors, as well as the equitable rule of equality; for if the prior creditors be paid in full out of the surplus fund, only two per cent. can be paid to the subsequent creditors; so that the statute has to be made operative against prior creditors, violating both their constitutional and statutory rights, or the statutory and equitable right of equal participation by the subsequent creditors must be disregarded, which would be a monstrous disregard of their rights, wholly intolerable to our statutes, directing a sheriff how to apportion the proceeds of an insolvent on executions in his hands, and to our statute of 1856, requiring a *pro rata* distribution of insolvent's assets.

Wherefore, the CHIEF JUSTICE and Judge HARDIN concurring in this opinion, the judgment is affirmed by an equal division of the court.

JUDGE ROBERTSON DELIVERED THE FOLLOWING OPINION, IN WHICH JUDGE PETERS CONCURRED:

The appellant, Mary Webster, of Richmond, Kentucky, owning about seventy-six dollars of personalty subject to execution, and a house and lot in said town, and being indebted to an amount exceeding the aggregate value of all of said property, conveyed the whole of it to the appellee, Thomas Bronston, jr., in trust for the payment of all her debts, so far as it would pay them "*ratably*," without impairing her homestead exemption, *which she thus reserved*.

In a suit in equity among all her creditors for fulfilling the trust and making proper distribution, the house and lot were sold for two thousand six hundred and eighty-seven dollars, and the personalty for seventy-six dollars and twenty-two cents, which left, after paying costs, a net aggregate of two thousand six hundred and twenty-seven dollars and twenty-seven cents for distribution.

The homestead statute of February, 1866, excepted from the exemption, all debts existing on the 1st of June, 1866, and provided that when, as in this case, the real estate is indivisible, if it be worth more than one thousand dollars, it shall be sold, and one thousand dollars reserved to the owner on account of the homestead exemption. (*Myers' Supplement, p. 715.*)

The debts existing on the 1st of June, 1866, amounted to one thousand six hundred and sixteen dollars and a fraction, and the debts accruing subsequently amounted to two thousand and fifty-two dollars and forty-three cents—the aggregate of all the debts provided for by the deed being three thousand six hundred and sixty-nine dollars and twenty-four cents ; and, consequently, there was, in the sale of the house and lot, a deficit of one

thousand and forty-one dollars and forty-seven cents of an amount sufficient to pay all the debts precedent and subsequent; and, deducting one thousand dollars for the appellant's homestead exemption, only one thousand six hundred and twenty-seven dollars and seventy-seven cents remained for distribution among all the creditors of both classes, according to the purpose and effect of the deed of trust.

The circuit court, however, finding that, after deducting the homestead one thousand dollars, and distributing the residue among all the creditors *pro rata* according to the trust, only forty-four per cent. of all the debts would be paid, leaving eight hundred and ninety-eight dollars and sixty cents of the antecedent debts unpaid, adjudged to those prior creditors, *in full payment*, that amount out of the homestead one thousand dollars— thus leaving to the appellant, for her homestead right, only one hundred and one dollars and forty cents; and she, claiming the whole one· thousand dollars, seeks relief by an appeal to this court.

As the amount raised by the sale of the personalty was appropriated to the payment of the costs of this suit, we shall treat the case as we should had the house and lot been the appellant's only property subject to distribution. Had that been divisible, only so much as necessary to pay their debts could have been subjected by prior creditors.

The provident aim of the statute, its context and its spirit, entitle it to a liberal interpretation for the purpose of securing .its benefits and effectuating its beneficent ends. It places the homestead exemption on the footing of all other statutory exemptions of property from sale under execution; and certainly intends that the homestead, to the extent of one thousand dollars

in value, shall never be taken, even by a creditor, on the 1st of June, 1866, *unless his debt cannot be otherwise made;* nor even by a subsequent creditor under any circumstances. And while it has not anticipated and expressly provided for every phase of every possible case, as it could not, still a careful reading of all its provisions will find its intent and scope fully as comprehensive as just suggested; and were this not so, its objects might easily and often be frustrated.

Like other statutes exempting a certain *peculium* from execution, the homestead act excepts antecedent debts only because the application of the exemption to them would, if available, impair the obligation of those pre-existing contracts, and therefore be unconstitutional; but, as between the debtor and his creditors, the dates of the contracts cannot affect their moral equality. In this respect there is neither priority nor preference; and, had there been no constitutional interdict, no statute of exemption would have discriminated between antecedent and subsequent debts, but all such enactments would have secured the exempted property against all debts equally. This is undeniable. The necessary deduction is, that debts subsequently contracted should never touch the consecrated property, which should be as secure as if no such debts existed. And it is equally self-evident that the Legislature intended that the same property should be intangible by prior creditors, unless their debts cannot be otherwise collected.

The second section of the enactment provides, as to all creditors, *precedent* as well as subsequent, that when an execution is levied on land, a portion to be selected by the owner, and not exceeding in value one thousand dollars, shall be set apart as a homestead. And

Webster vs. Bronston, Trustee, &c.

the fourth section provides that when, as in this case, the property shall be indivisible, all of it may be sold, but that one thousand dollars shall be reserved to the owner to buy another homestead.

Those provisions, when applied to the prior creditors in this case, reserved to the appellant one thousand dollars of the proceeds of the sale of her house and lot, because the surplus overpaid the whole of their debts; and the same provisions, when applied to the subsequent creditors, did not allow to them any portion of the reserved one thousand dollars, even though only about forty-one dollars remained after satisfying the antecedent creditors.

Had there been no prior creditors, and had the proceeds of the sale been only one thousand dollars, the subsequent creditors would certainly have had no right to touch one cent of that reserved fund; and we cannot see how the existence of prior creditors could give to the subsequent creditors any right which they could not otherwise have claimed; or more especially, how it could have impaired the homestead right which the prior creditors themselves had no authority to disturb, and might have been enjoined from touching

The principle of marshaling securities does not apply to a case like this, in which, *according to the policy and express provisions of the statute, no creditor, either precedent or subsequent, could sell the homestead without the owner's consent.* It was intangible by subsequent creditors, and prior creditors could have been required to make their debts out of non-exempt property. In any event, it was expressly exempt from subsequent debts; and as all antecedent creditors could have been paid without interfering with it, none of them could have forced a sale of it; nor could they be required to sell it for the benefit of others against

whom it was secured by law.    This would be strange
and inconsistent, by virtually taking away the exemption
and appropriating the homestead to subsequent creditors,
merely because there are prior creditors who themselves
would have had no right to touch it.

And the deed, by limit, does not impair, but conclu-
sively confirms, this exemption.

The appellant, anticipating a larger product from the
sale, but apprehending, nevertheless, that it would not be
enough to pay all her debts, conveyed to the trustee, for
*ratable* distribution among all her creditors, all her prop-
erty subject to execution; but expressly qualified, by the
precautionary provision, that " it is distinctly understood
that *nothing* herein is, *in any way*, to impair any claim to
my homestead, or any of the property exempt by law
from sale under execution."

We have seen that, without this deed, the homestead
was secure; and the provision just quoted only con-
firms its security by making assurance doubly sure.    As,
according to the facts and law of this case, the home-
stead was exempt from sale under execution by any
creditor, the deed did not convey it; and even if it did,
the express reservation saved it against all who accept-
ed the trust and sought distribution under the deed, *and,*
*consequently, according to its terms*.    All of them having
done this, none of them can disregard the conditions of
the trust, and which they admitted and confirmed by
accepting the deed and claiming distribution according
to its provisions and declared intent.    The decree, as
rendered, perverts those provisions and frustrates that
intent.    It ought to have adjudged to the appellant one
thousand dollars, and distributed, among all the credit-
ors, the residue of the proceeds of the sale of her
house and lot.    Such a decree was required by the deed

of trust, and also by the letter, spirit, and aim of the homestead law, which ought to be construed consistently, and enforced liberally and beneficially.

The judgment of the circuit court was, therefore, erroneous, and ought to be reversed, and the cause remanded for a judgment conformable with this opinion of Judges ROBERTSON and PETERS. But as the CHIEF JUSTICE and Judge HARDIN render a conflicting opinion in favor of affirmance, the legal effect of this equal division in the court is an affirmance.